**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 1511001640 |
| | ) | |
| | ) | |
| RYAN SHOVER, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: October 7, 2024
Decided: December 20, 2024

**COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE SUMMARILY DISMISSED**

Carolyn Hake, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Ryan Shover, James T. Vaughn Correction Center, Smyrna, Delaware, *pro se*.

SALOMONE, Commissioner

This 20th day of December, upon consideration of Ryan Shover's ("Shover" or "Defendant") first and second Motions for Postconviction Relief,[1] this Court's order summarily dismissing Defendant's first Motion for Postconviction Relief,[2] the Delaware Supreme Court's order affirming this Court's dismissal of Defendant's first Motion for Postconviction Relief,[3] and the record in this case, it appears to the Court as follows:

## FACTS AND PROCEDURAL HISTORY

In 2012, Michael Kman, Paul DiSabatino and David Hess conspired to kill Wayne Cappelli, who was a friend of both DiSabatino and Hess, in a scheme to obtain the proceeds of a $360,000 insurance policy on Cappelli's life.[4] DiSabatino and his wife were named beneficiaries under the policy and were appointed as guardians of Cappelli's daughter in his will.[5] Kman approached Shover to inquire about his interest in killing someone for money, and the Defendant indicated he was willing to do so for $30,000.[6]

On February 5, 2013, Hess showed Kman and the Defendant the usual route that Cappelli took from his job at SuperFresh to his apartment in Claymont, which

---

[1] Docket Item. ("D.I") 94, 167. For purposes of this Report and Recommendation, all docket item references relate to Superior Court Criminal Docket, *State v. Ryan Shover*, Case No. 1511001640.
[2] D.I. 163.
[3] D.I. 166.
[4] *Shover v. State*, Del. Supr., No. 216, 2023, LeGrow, J. (February 28, 2024) (ORDER).
[5] *Id.*
[6] *Id.*

Cappelli shared with his daughter and Hess.[7] Shover identified a grassy area along Delaview Avenue as the best spot to kill Cappelli.[8] On February 16, 2013, Hess made arrangements with Cappelli to walk home together from SuperFresh.[9] Per the perpetrators' plan, Hess was responsible for ensuring that Cappelli encountered Shover in the predetermined area where Defendant planned to attack Cappelli.[10]

Defendant's family owned a 1999 green Chevy Cavalier with distinct characteristics that was seen on surveillance video on and around Delaview Avenue between 8:08 p.m. and 10:09 p.m. on the date of the murder.[11] Cell tower records show that Defendant's cell phone appeared to be turned off between the hours of 6:18 p.m. and 11:07 p.m., followed by a three-minute phone call to Kman's phone at 11:09 p.m. informing him that "the job was done."[12] On February 18, 2013, Cappelli's body was found in a wooded area near Delaview Avenue, and a baseball bat stained with Cappelli's blood was found in a nearby creek bed.[13] The medical examiner ruled that Cappelli's cause of death was blunt force trauma to the head.[14]

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* After missing the bus, Hess texted Cappelli and advised he wasn't going to make it to walk home with him. Cappelli ended up walking home alone at 9:17 p.m. *Id.*
[11] *Id.*
[12] *Shover v. State*, Del. Supr., No. 216, 2023, LeGrow, J. (February 28, 2024) (ORDER).
[13] *Id.*
[14] *Id.* No fingerprints were found on the baseball bat, but Cappelli's DNA was discovered on the bat. A mixed DNA profile was also found on the bat, but Kman, Hess, DiSabatino, and the Defendant were ruled out. *Id.*

3

In 2016, Kman, Hess, and DiSabatino were charged for their roles in Cappelli's murder and they all entered into plea agreements and testified against Shover at his trial.[15] Other trial witnesses included Gabriel Stouffer, Defendant's former cellmate, and Rodger Atwood, another inmate at the prison with Defendant, both of whom testified that Shover admitted to the killing.[16] In Defendant's testimony, he admitted to knowing Kman, Hess, and DiSabatino, but denied killing Cappelli and proclaimed his innocence of any insurance plot.[17]

On February 1, 2018, a jury found the Defendant guilty of two counts of first-degree Murder, two counts of Possession of a Deadly Weapon During the Commission of a Felony, first-degree Conspiracy, and Insurance Fraud.[18] Defendant was sentenced on April 20, 2018, to two life terms and an additional fifteen years of incarceration.[19] On July 30, 2018, Defendant filed a notice of direct appeal.[20] On May 21, 2019, the Delaware Supreme Court affirmed the judgment of the Superior Court "on the basis of its transcript rulings during trial."[21]

On July 3, 2019, Defendant filed both a *pro se* Motion for Postconviction Relief (the "First Postconviction Motion") and a Motion for Appointment of Counsel

---

[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] D.I. 62.
[19] D.I. 66.
[20] D.I. 90.
[21] D.I. 92-93.

under Superior Court Criminal Rule 61 ("Rule 61").[22]  The Superior Court granted the Motion for Appointment of Counsel on July 10, 2019.[23]  On December 4, 2019, Christopher Koyste, Esquire, was appointed as Defendant's postconviction counsel ("Postconviction Counsel").[24]  In his First Postconviction Motion, Shover argued that: (1) his counsel was ineffective for failing to have items found at the crime scene tested for DNA and compared to DNA found on the murder weapon; (2) the prosecutor engaged in misconduct by eliciting unsupported F.B.I. testimony; and (3) he was deprived of the right to confront witnesses because the F.B.I. agent who recorded witnesses' statements was not called to testify.[25]

On January 21, 2021, Postconviction Counsel filed a motion to withdraw pursuant to Rule 61(e)(6), finding no meritorious postconviction claims.[26] Defendant filed a Motion for Reconsideration of his claims based upon recent court decisions and the Delaware Rules of Evidence.[27]  On May 15, 2023, Defendant's First Postconviction Motion was summarily dismissed and Postconviction Counsel's motion to withdraw was granted.[28]

---

[22] D.I. 94.
[23] D.I. 98.
[24] D.I. 102.
[25] D.I. 94.
[26] D.I. 116.
[27] D.I. 129. Defendant cited the following cases: *Howell v. State*, 2021 Del. LEXIS 396, at *11 (Del. Dec. 14, 2021), which is now cited as *Howell v. State*, 268 A.3d 754 (Del. 2021), and *Martinez v. Ryan*, 566 U.S. 1 (2012). He also cited Del. R. Evid. 404(b).
[28] D.I. 163.

Defendant appealed this Court's order summarily dismissing his First Postconviction Motion on June 15, 2023. The Delaware Supreme Court affirmed this Court's summary dismissal of the First Postconviction Motion on February 28, 2024.[29] On September 12, 2024, Defendant filed his second *pro se* Motion for Postconviction Relief (the "Second Postconviction Motion") and a Motion for Appointment of Counsel.[30] Both Motions were referred to the undersigned Commissioner on October 7, 2024 for a Report and Recommendation. For the reasons discussed below, both Motions should be denied.

## DEFENDANT'S MOTION FOR APPOINTMENT OF POSTCONVICTION COUNSEL

Defendant seeks appointment of postconviction counsel for his Second Postconviction Motion.[31] Because this is Shover's Second Postconviction Motion, Defendant must satisfy Rule 61(e)(5) for appointment of counsel for second or subsequent motions. Rule 61(e)(5) states that "the judge may appoint counsel for an indigent movant only if the judge determines that the second or subsequent motion satisfies the pleading requirements" of Rule 61(d)(2)(i)-(ii).[32] Rule 61(d)(2)(i)-(ii) provides, in pertinent part, as follows:

> (2) Second or subsequent postconviction motions. A second or subsequent motion under this rule shall be

---

[29] D.I. 166.
[30] D.I. 167.
[31] D.I. 168.
[32] Super. Ct. Crim. R. 61(e)(5).

6

summarily dismissed, unless the movant was convicted after a trial and the motion either:

> (i)  pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted; or

> (ii)  pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid.[33]

In Defendant's Motion for Appointment of Postconviction Counsel, he asserts that his trial counsel's "poor representation may have violated [his] rights to a fair and impartial trial and on direct appeal, and it may have caused the court to improvidently issue its fact findings and conclusions of the law and instruction of the empaneled and sworn jury."[34] Defendant further argues that his trial counsel "neglected to inform the court of their bias and presumptively prejudicial behavior."[35] These contentions do not plead new evidence of actual innocence or that a new rule of constitutional law applies to Defendant's case.[36] Therefore, Defendant has failed to meet the heightened pleading requirements of Rule

---

[33] Super. Ct. Crim. R. 61(d)(2).

[34] D.I. 168.

[35] *Id.*

[36] Defendant does not seem to address why he should receive postconviction counsel, but instead, argues his trial counsel was ineffective and allegedly dishonest with the Court about their representation of Defendant.

7

61(d)(2)(i)-(ii), and his Motion for the Appointment of Postconviction Counsel must be denied.[37]

## SECOND MOTION FOR POSTCONVICTION RELIEF

**Rule 61 and Procedural Bars to Relief**

Rule 61 governs the procedures by which an incarcerated individual may seek to have his conviction set aside on the ground that the court lacked jurisdiction or any other ground that is a sufficient factual and legal basis for a collateral attack upon the conviction.[38] That is, it is a means by which the court may correct Constitutional infirmities in a conviction or sentence.[39] "Rule 61 is intended to correct errors in the trial process, not allow defendants unlimited opportunities to relitigate their convictions."[40]

Given that intent, before considering the merits of any claims for postconviction relief, the Court must first determine whether there are any procedural bars to the postconviction motion.[41] Rule 61(i) establishes four procedural bars to postconviction relief.[42] Rule 61(i)(1) prohibits the Court from considering a motion for postconviction relief unless it is filed within one year after

---

[37] As noted above, Defendant was appointed counsel in his First Postconviction Motion pursuant to Rule 61(e).
[38] Super. Ct. Crim. R. 61(a)(1).
[39] *Harris v. State*, 410 A.2d 500 (Del. 1970).
[40] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[41] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[42] Super. Ct. Crim. R. 61(i)(1)-(4).

the judgment of conviction is final.[43] As previously discussed, Rule 61(i)(2) prohibits the filing of repetitive motions for postconviction relief unless either, the movant "pleads with particularity that new evidence exists that creates a strong inference" of actual innocence[44]; or, "pleads with particularity that a new rule of constitutional law, made retroactive to cases on collateral review," applies to the movant's case.[45]

Rule 61(i)(3) provides that "any ground for relief not asserted in the proceedings leading to the judgment of conviction" is barred, unless the movant shows (a) cause for relief from the procedural default, and (b) prejudice from violation of the movant's rights.[46] Rule 61(i)(4) provides that "any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred."[47] Lastly, the aforementioned bars to relief do not apply either to a claim that the court lacked jurisdiction or to a claim that satisfies the pleading requirements of Rule 61(d)(2)(i)-(ii).[48]

---

[43] Super. Ct. Crim. R. 61(i)(1).
[44] Super. Ct. Crim. R. 61(d)(2)(i).
[45] Super. Ct. Crim. R. 61(d)(2)(ii).
[46] Super. Ct. Crim. R. 61(i)(3).
[47] Super. Ct. Crim. R. 61(i)(4).
[48] Super. Ct. Crim. R. 61(i)(5).

**Defendant's Arguments**

In his Second Postconviction Motion,[49] Defendant sets forth two claims of ineffective assistance of counsel asserting that (1) trial counsel "neglected to make a record"; and (2) trial counsel's "prejudicial behavior is a bias that is unexceptible [sic]. They neglected to inform the court of that bias. They could have or should have produced it." More specifically, the prejudicial behavior Defendant asserts is that trial counsel failed to inform the court of statements they allegedly made in front of Defendant's brother and his mother during a recess, which statements, if made, indicate trial counsel's belief that the Defendant committed the crimes charged.[50] Defendant further argues that since the statements were made during a recess that trial counsel should have advised the Court of such statements through a "motion in camera or a motion in limine. They did neither." Defendant's argument lies in the notion that trial counsels' purported belief that Defendant was guilty of the crimes

---

[49] D.I. 167. Defendant includes certain additional statements in his motion in an apparent effort to overcome the procedural bars. First, he writes that "there is no statute of limitations on first degree murder." Next, he writes that "movant's defense was his innocence." While these two statements are accurate, neither is a basis for relief that can be applied in a postconviction relief motion. Lastly, he writes that "this is new matter." While the information contained in Defendant's Second Postconviction Motion may be "new," as in such information has never been included in Defendant's prior filings with the Court, it is not new evidence that would satisfy Rule 61(d)(2)(i).
[50] Shover contends that after the alibi testimony provided by his brother, Randy Shover, the Defendant's mother, brother, co-counsel and their private investigator were walking together outside the courtroom and the private investigator allegedly told Randy, "It doesn't look good." As they continued to walk towards the elevators, one of Defendant's attorneys turned to Randy and allegedly stated, "He did it, and if he didn't, you did." D.I. 167.

10

charged was prejudicial and cast doubt on their integrity and ability to represent Defendant appropriately.

The Second Postconviction Motion filed on September 12, 2024 is procedurally barred pursuant to Rule 61(i)(2) and (4) and should be summarily dismissed. Defendant is prohibited from bringing the claims of ineffective assistance of counsel set forth in the Second Postconviction Motion because, pursuant to Rule 61(i)(2)(ii) and (4), any ground for relief that was not previously raised is deemed waived,[51] and any claims that were formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, are thereafter barred.[52] Therefore, Defendant was required to bring all claims of ineffective assistance of counsel in his First Postconviction Motion. Having failed do so, the claims are now barred.

And, because this is Shover's Second Postconviction Motion, he must satisfy the pleading requirements of Rule 61(d)(2)(i)-(ii) to avoid the procedural bar. As previously discussed, he has failed to do so. None of his claims constitute new evidence of actual innocence as contemplated by the Court.[53] "To qualify for an

---

[51] Rule 61(i)(2)(ii) provides, in pertinent part, that "any first motion for relief under this rule and that first motion's amendments shall be deemed to have set forth all grounds for relief available to the movant."
[52] Super. Ct. Crim. R. 61(i)(3) and (4).
[53] *Purnell v. State*, 254 A. 3d 1053 (Del. 2021).

exception to Rule 61's procedural bars against untimely, successive motions, [a defendant] must identify with particularity new evidence that creates a strong inference that he is actually innocent in fact of the acts underlying the charges."[54] Defendant's blanket assertions that "there should be no impedaments [sic] to these claims of ineffective assistance of council [sic], although this is movants 2nd motion" and "this is new matter" are insufficient to meet the pleading requirements of Rule 61(d)(2)(i).[55] Nor has Defendant cited to any new rule of constitutional law made retroactive to cases on collateral review under Rule 61(d)(2)(ii) or that the Court lacked jurisdiction. As such, the Second Postconviction Motion should also be barred under Rule 61(i)(2).

---

[54] *Id.* at 1060.
[55] D.I. 167.

## CONCLUSION

Defendant's Second Postconviction Motion is procedurally barred under Rule 61(i)(2) and (4), and his Motion for Appointment of Counsel must likewise be denied because he has failed to satisfy the pleading requirements of Rule 61(d)(2)(i)-(ii). Accordingly, the Second Postconviction Motion should be **SUMMARILY DISMISSED.**

**IT IS SO RECOMMENDED.**

/s/ *Janine M. Salomone*
The Honorable Janine M. Salomone

13